UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICE SMITH,                                    Case No. 19-13095

      Plaintiff,                            Stephanie Dawkins Davis
v.                                                United States District Judge

COASTAL PRODUCE
DISTRIBUTORS, INC. et al.,

      Defendants.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#19]**

**I.   INTRODUCTION**

This action arises out of a dispute about overtime compensation. Before the

court is Defendants' Motion for Summary Judgment. (ECF No. 19). Plaintiff

Patrice Smith was employed by Defendants, Coastal Produce Distributors, Inc.;

Coastal Carriers, LLC; S&W Transport, LLC; and their owners Lawrence Weichel,

Cherie Weichel, and Todd Stadwick from April 2014 to April 26, 2019 as a

delivery driver. He alleges in his complaint that Defendants failed to pay him

overtime compensation in violation of the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 207 *et. seq*. (2010). In the instant Motion for Summary

Judgment, Defendants argue that Smith is exempt from the FLSA overtime wage

requirement because the motor carrier exemption applies to his employment and

Smith is not entitled to overtime.  For the reasons stated below, the court agrees and therefore **GRANTS** Defendants' Motion for Summary Judgment.

## II.   FACTUAL BACKGROUND

Defendants are a group of interrelated businesses that deliver nationally sourced as well as local produce and dairy products throughout Michigan and Northern Ohio.  (ECF No. 19-3, PageID.115).  Defendant Coastal Produce is a produce distribution company, Defendant S&W Transports owns the trucks used in distribution by Coastal Produce, and Defendant Coastal Carriers employs the drivers used in the distribution by Coastal Produce.  (*Id.* at PageID.114).  Defendants are registered as an interstate motor carrier with the United States Department of Transportation ("DOT").  Therefore, Defendants' drivers are required to comply with DOT safety regulations, including filling out DOT log sheets where the DOT requires, complying with DOT hours of service, and complying with DOT drug testing, among other things.  (*Id.* at PageID.117-18, 126; ECF No. 20, PageID.339).  Regardless, Defendants include in their driver handbook a statement that they are governed by the DOT.  (ECF No. 19-4, PageID.144).  The handbook also includes various references to DOT regulations that drivers must follow.  (*See* ECF No. 19-4, PageID.137, 149, 154, 156–57).

Defendants submitted a declaration by Defendant Weichel, the owner and operator of Defendant businesses, stating that Defendants have delivered produce

and dairy throughout Michigan and Northern Ohio since 1998.  (ECF No. 19-3, PageID.115).  According to Weichel, 95% of the product that Defendants distribute is procured by Defendants from out-of-state suppliers—primarily from California and the west coast, except for in the summer months.  (ECF No. 19-3, PageID.115).  During the summer, Defendants obtain a larger portion of their produce from Michigan farmers; however, even then they still depend on out-of-state suppliers in the summer months.  *Id.*  Weichel also states that Coastal Produce orders product from its out-of-state suppliers specifically for delivery to its customers in Michigan and Ohio.  *Id.*  The amount of product that Coastal Produce buys is based on projections to fulfill the needs of its customers, and it attempts to buy the exact amount of produce that it will need for its customers.  *Id.*  Coastal Produce arranges with third-party shippers to deliver the product from the out-of-state suppliers to its Detroit warehouse.  *Id.*  The product is then stored in the warehouse until it is repackaged for delivery to its customers.  (*Id.* at PageID.116).  The product itself is not processed or altered at the warehouse before Coastal Produce delivers it.  *Id.*  The majority of Coastal Produce's customers are located in the state of Michigan.  *Id.*  But, some of its customers are located in Ohio, and Defendants deliver to Ohio three to four days out of each week.  *Id.*

In his declaration, Smith says he was not aware that Defendants made deliveries outside of Michigan.  (ECF No. 20-1, PageID.358-59).  Smith himself

never traveled outside of Michigan when he worked for Defendants.  (*See id.* at PageID.358).  He asserts that Coastal Produce obtained their product from wholesalers within Michigan and that the wholesalers then delivered the product to Defendants, or Defendants' drivers picked up the product from the wholesalers' locations.  (*Id.* at PageID.359).  Smith believes that Defendants did not order their product directly from out-of-state sources, but rather bought their product from local wholesale distributors, repackaged the product, and sold the product to its customers.  (*Id.* at PageID.359-60).  Smith also contends that Defendants never required him to fill out or turn in DOT logbooks or log sheets for his delivery trips. (*Id.* at PageID.360).

Smith was employed by Defendants as a delivery driver from 2014 through April 2017 and again from August 2017 through May 2019.  (ECF No. 20, PageID.3225).  At some point during his employment, Smith signed an employee orientation document stating that he had received a copy of the employee manual.[1] (ECF No. 19-5, PageID.176).  Defendants' Driver Handbook and Safety Manual (hereinafter "Driver Handbook") states, among other things,  "[t]he Company is a motor carrier involved in interstate commerce.  You may be called upon to do an out of state route at any time."  (ECF No. 19-4, PageID.140).  However, Smith asserts that he never received a copy of Defendants' Driver Handbook, (ECF No.

---

[1] The employee document Smith signed is undated.  *See* ECF No. 19-5, PageID.176.

20, PageID.336), while Stadwick asserts that he gave Smith a copy of the handbook when Defendants re-hired him in 2017.  (ECF No. 19-5, PageID.168).  Smith also states that he asked Defendant Stadwick in 2014 and in 2017 if he would be expected to drive any out-of-state routes, and Stadwick informed him that he would only be driving in Michigan.  (ECF No. 20, PageID.337).  Stadwick, on the other hand, asserts that he informs all delivery drivers that they are expected to be willing and able to drive all of the delivery routes at any time.  (ECF No. 19-5, PageID.168).  Smith worked 50 to 55 hours per week during his employment with Defendants.  *Id.*  He was paid his regular rate for all of the hours that he worked, and Defendants did not pay him one- and one-half times his regular rate for the hours that he worked over forty hours per week.  *Id.*

Smith filed a complaint against Defendants on October 22, 2019, alleging one count of a violation of the Fair Labor Standards Act for failure to pay him overtime compensation.  (ECF No. 1).  On July 17, 2020, Defendants filed their Motion for Summary Judgment, arguing that they were not required to pay Smith overtime because they are exempt from the FLSA requirements under the motor carrier exemption.  (ECF No. 19).  Smith responded on August 7, 2020, arguing that his employment was not covered by the exemption.  (ECF No. 20).  Defendants filed a reply on August 21, 2020, further stating that there are no disputes of fact that the motor carrier exemption applies to Smith's employment.

(ECF No. 21).  The court heard oral argument  on January 28, 2021, and

Defendants filed a short supplemental brief that same day advancing authority in

further support of their argument.  (ECF No. 26).  After a period of deliberation,

the court rules as follows.

## III.   LEGAL STANDARD

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record . . .; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of

the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## IV.   DISCUSSION

### A.   Applicability of the Motor Carrier Exemption

Smith alleges that Defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay him overtime wages for hours that he worked in excess of 40 hours per week during his employment. (ECF No. 1, PageID.4). Section 207 of the FLSA provides that an employer must pay its employees at least 1.5 times their regular rate if they work over forty hours in a week. 29 U.S.C. § 207(a). However, pursuant to 29 U.S.C. § 213(b)(1), section 207 does not apply to employees for whom "the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section

31502 of Title 49[.]"  Title 49 U.S.C. § 31502 is also known as the Motor Carrier

Act ("MCA").  Thus, the FLSA does not apply to employees who are subject to the

MCA.  This exception is known as the MCA exemption.

Under the MCA, the Secretary of Transportation may prescribe

qualifications and maximum hours of service for the employees of a motor carrier.

49 U.S.C. § 31502.  The MCA also applies to property that is "transported by

motor carrier-- (1) between a place in-- (A) a [s]tate and a place in another [s]tate;

[and] (B) a [s]tate and another place in the same [s]tate through another

[s]tate[,]"—in other words, to property that travels in interstate commerce.  49

U.S.C. § 13501(a).  Courts often look to the Department of Labor's ("DOL")

regulations when interpreting the MCA exemption.  *Baird v. Wagoner Transp. Co.*,

425 F.2d 407 (6th Cir. 1970).  The applicability of the exemption depends both on

the class to which the employer belongs, and the class of work that the employee

performs.  29 C.F.R. § 782.2(a).  The DOL applies the motor carrier exemption

when (1) the employer is a motor carrier, and (2) the employee "engage[s] in

activities of a character directly affecting the safety of operation of motor vehicles

in the transportation on the public highways of passengers or property in interstate

or foreign commerce[.]"  29 C.F.R. § 782.2(a).  Further, the motor vehicles used by

the employee must have a gross vehicle weight rating of at least 10,001 pounds for

the MCA exemption to apply.  49 C.F.R. § 390.5.

Here, neither party disputes that Defendant S&W is a private motor carrier and that Smith's work activities affected the safety of operation of the motor vehicles.  (ECF No. 19, PageID.99; ECF No. 20, PageID.344).  Nor do the parties dispute that Defendants' vehicles weighed at least 10,001 pounds.  *See id.*  The parties' sole dispute is whether the character of Smith's work was considered a part of interstate commerce.  The question of whether the activities of an employee exclude him from FLSA overtime benefits is a question of law for the courts to decide.  *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001).  Notwithstanding Defendants' contention to the contrary, the Sixth Circuit has determined that the MCA exemption should be narrowly construed against the employer, and the employer has the burden of proof to show that the exemption applies.  *See Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004); *Hurt v. Commerce Energy, Inc.*, 973 F.3d 509, 517 (6th Cir. 2020).

### 1.    Fixed and Persistent Intent to Continue Shipments in Interstate Commerce

The Interstate Commerce Commission ("ICC")[2] issues guidelines that courts utilize when construing the MCA.  *See Baird v. Wagoner Transp. Co.*, 425 F.2d

---

[2] In 1966, Congress passed the Department of Transportation Act, transferring to the DOT "all functions, powers, and duties of the [ICC] with regards to the hours and safety provisions of the MCA."  *Musarra v. Digital Dish, Inc.*, 454 F. Supp. 2d 692, 700 n.18 (S.D. Ohio 2006); *see also* Exec. Order 11,340 (Mar. 30, 1967), pursuant to Pub. L. No. 89-670, sec. 6(e), 80 Stat. 931. Congress later abolished the ICC in 1995—*see* ICC Termination Act, Pub. L. No. 104-88, 109 Stat 803—and transferred the ICC's remaining regulatory duties to the DOT and the Surface Transportation Board.  *See* 49 U.S.C. §13501; *Jones Exp., Inc. v. Watson*, No. 3:10-cv-140, 2011

407, 410 (6th Cir. 1970).  The ICC issued the most recent set of guidelines in 1992.

*See Finn v. Dean Transp., Inc.*, 53 F. Supp. 3d 1043, 1053-54 (M.D. Tenn. 2014).

The guidelines state, "[t]he essential and controlling element in determining

whether the traffic is properly characterized as interstate is whether the shipper has

a fixed and persisting intent to have the shipment continue in interstate commerce

to its ultimate destination."  Ex Parte MC No. 207, 8 I.C.C. 470 (ECF No. 19-19,

PageID.295).  The guidelines also outline six factors that are indicative of

interstate intent:

> [(1)] [n]o processing or substantial product modification
> of substance occurs at the warehouse or distribution
> center; . . . [(2)] [w]hile in the warehouse, the merchandise
> is subject to the shipper's control and direction as to the
> subsequent transportation[;] [(3)] [m]odern systems allow
> tracking and documentation of most, if not all, of the
> shipments coming in and going out of the warehouse or
> distribution center[;] [(4)] [t]he shipper or consignee must
> bear the ultimate payment for transportation charges even
> if the warehouse or distribution center directly pays the
> transportation charges to the carrier[;] (5) [t]he warehouse
> utilized is owned by the shipper[; and (6)] [t]he shipments
> move through the warehouse pursuant to a storage in
> transit provision.

*Id.*  No factor is, by itself, "determinative" of the shipper's intent, and the court

should consider all of the factors, in addition to the "practical realities of the

---

WL 1303164, at *6 (M.D. Tenn. Mar. 31, 2011).  Thus, although the DOT now regulates motor
carriers and not the ICC, courts still look to the ICC guidelines when interpreting the MCA
exemption, as the DOT took over motor carrier regulation from the ICC.

transportation at issue." *See Musarra v. Digital Dish, Inc.*, 454 F. Supp. 2d 692, 711 (S.D. Ohio 2006). Defendants assert that the MC-207 factors require a finding that they had a persisting intent to deliver their products in interstate commerce. (ECF No. 19, PageID.101). They point out that most of the produce that they delivered on the trucks Smith drove originated in the west coast of the United States. *Id.* They purchased their product from out-of-state vendors based on specific projections. *Id.* They then stored the product in Michigan at their warehouse for a temporary period before delivering it to their customers, and they did not alter the produce before delivery. *Id.* As such, defendants maintain that Smith's role in driving the product to their customers was the final part of the produce's journey from the west coast. *Id.*

Smith, on the other hand, argues that there was a sufficient break in the continuity of the original interstate commerce such that his transport of the produce within Michigan constitutes intrastate commerce only. (ECF No. 20, PageID.345). Smith admits that much of Defendants' produce originated from an out-of-state source. (*Id.* at PageID.346). But he contends that Defendants did not purchase their produce from out-of-state vendors; instead, an in-state wholesaler purchases the produce from the out-of-state vendors, and then Defendants buy the produce from the in-state wholesaler. (*Id.* at PageID.346-47). As a result, Smith asserts that the shipper's intent (i.e. the west coast supplier's) was to deliver the product to

the in-state wholesaler. (*Id.* at PageID.347). Smith states that Defendants' product is likely repackaged at the wholesale location from which Defendants obtain it and repackaged again by Defendants before they distribute it to customers. *Id.* Smith asserts that the out-of-state shipper does not maintain control or direction of the subsequent transportation of the product from the wholesale warehouse or from Defendants' location, thus evidencing that there is no intent for the shipment to continue in interstate commerce. *Id.* Smith also asserts that the MC-207 factors look to the out-of-state shipper's intent with respect to the product, and not to the intent of the distributing entity, i.e. Defendants. *Id.*

In order to properly consider the MC-207 factors, this court must first determine whether Defendants themselves purchase their produce from the out-of-state suppliers as Defendants contend, or whether they purchase their produce from in-state wholesalers, as Smith argues. Both parties submitted declarations to support their positions. Defendants submitted the declaration of Cherie Weichel, the owner/operator of Defendant businesses since their formation. (ECF No. 19-3). Weichel states that for nine months of the year, 95% of the product distributed by Defendants is from out-of-state suppliers. (*Id.* at PageID.115). Defendants purchase more of their products from Michigan growers during the summer months, but even then they also rely on out-of-state suppliers. *Id.* The declaration further states that Defendants purchase produce from out-of-state suppliers

specifically for delivery to its customers in Michigan and Ohio.  *Id.*  Further, Defendants procure the produce from the out-of-state suppliers based upon projections for how much product they will need, and they order the exact amount of produce they will need.  *Id.*  Weichel says that Defendants arrange with third-party shippers to deliver the produce from their out-of-state suppliers to their warehouse in Detroit.  *Id.*  The product is then stored until Defendants re-package it for delivery; Defendants do not alter or process the produce.  (*Id.* at PageID.116).

Smith submitted a declaration of his own.  (ECF No. 20-1).  In it, he states that "to the best of [his] knowledge," Defendants did not order their product directly from out-of-state suppliers, but obtained their product from in-state wholesalers.  (*Id.* at PageID.359).  The declaration names several wholesalers in the state of Michigan from whom he alleges Defendants purchased their product.  *Id.*  Smith states that he picked up Defendants' product from Michigan wholesalers and delivered the product to Defendants on numerous occasions.  *Id.*

Fed. R. Civ. P. 56(c)(4) states that a declaration that is used to support or oppose a motion for summary judgment "must be made on personal knowledge[.]" District courts have accepted declarations and affidavits as evidence in motions for summary judgment where they contain "reasonably specific detail" and have asserted personal knowledge of the issue at-hand.  *See Wisdom v. U.S. Tr. Program*, 232 F. Supp. 3d 97, 115 (D.D.C. 2017) (declining to strike affidavits as

insufficient where the affiants asserted they had personal knowledge of the issue); *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 101 F. Supp. 3d 1345, 1355 (M.D. Ga. 2015) (finding an affidavit insufficient where it did not rely upon personal knowledge and was too general).

Here, both parties  submitted declarations to support their positions about where Defendants procure their product.  However, Defendants' declaration is from the owner and operator of all of the Defendant businesses who has been the owner/operator since the inception of the businesses.  The declaration therefore comes from an individual who has personal knowledge of the Defendants' buying practices, and Weichel affirms that she has personal knowledge in her declaration. Weichel's declaration is also sufficiently detailed for this court to conclude that Defendants procure the majority of their product from out-of-state suppliers and make all of the arrangements to ship, store, and deliver the product to its customers from the west coast to Michigan and Ohio.

Contrastingly, portions of Smith's declaration are based on his limited knowledge of the Defendant businesses as a delivery driver.  While he purports to have personal knowledge of all the facts alleged in his declaration, he fails to state how his position as a delivery driver gives him personal knowledge of Defendants' buying practices—either by introducing statements of other individuals who operate Defendant businesses, or by introducing documents that show where

Defendants buy their product.  Moreover, Smith concedes that the information he offers about where Defendants ordered their products is merely "[t]o the best of [his] knowledge."  (ECF 20-1, PageID.359).  Yet, the only evidence he offers as a basis for his knowledge is his own limited experience picking up produce from in-state wholesalers.  Therefore, the court concludes that Smith does not have sufficient personal knowledge of the buying practices of the Defendants.  Smith's statements about where Defendants buy their produce from that go beyond what he has personally observed are based on speculation and conjecture, which is insufficient to create a dispute of fact.

Smith does state in his declaration that he picked up product from Michigan wholesalers on numerous occasions—a fact about which he would have personal knowledge.  However, this statement does not create a genuine issue of material fact because it is insufficient to undermine Weichel's statement.  Indeed, the fact that one driver, here Smith, picked up product from Michigan wholesalers is far from providing a picture of the Defendants' overall purchasing practices.  Moreover, Smith provides no details about how often and when he picked up product from in-state wholesalers or what percentage of Defendant's product Smith was responsible for transporting during the relevant time.  Thus, Smith's statement about picking up product from Michigan wholesalers is consistent, or at least not inconsistent, with Weichel's statement that Defendants obtain some of

their product from in-state wholesalers and rely more on in-state wholesalers during the summer months.  It is thus not a mutually exclusive proposition that Smith would pick up product from wholesalers on numerous occasions, while Defendants, at the same time, procured most of their goods from out-of-state sources, especially outside of the summer season.

Based on the foregoing, this court concludes that the evidence in the record shows that Defendants procured their product from out-of-state suppliers and arranged for the shipment and delivery of the product to its customers in Michigan and Ohio.  Defendants proffered the sworn declaration of Defendants' owner and operator attesting to the fact that Defendants buy the majority of their product from out-of-state suppliers and then arrange for the product to be shipped and delivered to its customers.  Smith's declaration, attempting to counter these facts without personal knowledge of adequate facts to raise a genuine dispute, is insufficient. Therefore, the court finds that Defendants have sufficiently demonstrated that there is no genuine issue of fact as to whether they obtained their product from out-of-state vendors, suggesting that there was not a break in the continuity of the product when it was shipped to Michigan.

Next, the court will consider whether Defendants' product can be considered a part of interstate commerce.  Intrastate driving is covered by the MCA exemption if the goods being transported are "part of an interstate movement" and have been

transported from other states.  29 C.F.R. § 782.7(b)(1).  *See also Wells v. A.D. Transp. Express, Inc.*, No. 15-CV-11324, 2016 WL 3213396, at *4 (E.D. Mich. June 10, 2016).  The court has concluded that the goods that Smith transported were part of interstate movement.  Further, the continuity of movement in this case supports the conclusion that Defendants' goods are part of interstate commerce. The "practical continuity of movement" test holds that an interstate journey does not end where product is temporarily stored at a warehouse.  *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943).[3]  The *Walling* court held that a wholesale distributor's product remained a part of interstate commerce where it ordered goods from out-of-state suppliers to meet the needs of specified customers, and where it ordered goods with their customer's name printed on it.  *Id.  See also Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642, 647-48 (W.D. Penn. 2004) (citing the practical continuity of movement test and finding that goods were in continuous interstate transportation where they were bought for specific customers from out-of-state vendors).  Here, Weichel's declaration states that Defendants order a specific amount of product for its customers based on projections. Although Defendants do not buy their product for specific customers, Defendants'

---

[3] The *Walling* court was construing "interstate commerce" as it is used in the FLSA.  "However, the DOL interprets the exemption for regulatory enforcement purposes by assuming that a movement in interstate commerce for purposes of the FLSA is also a movement in interstate commerce for purposes of the MCA."  *Jones v. Centurion Int. Assocs., Inc.*, 268 F.Supp.2d 1004, 1009 (N.D. Ill. 2003); *see also Badgett*, 350 F. Supp. 2d at 647 n.3.

actions suggest that there was a practical continuity of movement because they ordered their product specifically for their Michigan and Ohio customers, mindful of the exact amount needed for these customers, and ordered their product based on how much they thought their customers needed.  Therefore, the storage of the produce at Defendants' warehouse does not break the continuity of the movement of their product in interstate commerce.

In addition, the MC-207 factors further tend to show that Defendants had a fixed and persistent intent to have their product continue in interstate commerce to its ultimate destination such that the MCA exemption applies.  As an initial matter, Smith argues that the MC-207 factors look to the out-of-state *shipper's* intent with respect to the product—the out-of-state supplier—and not the intent of the distributing entity—i.e., Defendants.  (ECF No. 20, PageID.347-48).  Therefore, Smith contends that it is improper for Defendants to make their argument concerning the MC-207 factors from their perspective and not the west coast shipper's perspective.  *Id*.  However, Smith's argument is not persuasive.  First, this court has concluded that Defendants were the entity/entities that procured the produce from out-of-state suppliers and arranged for its shipment to Michigan. Further, other courts assessing the MC-207 factors have looked to the defendant/employer's intent, even when the defendant/employer contracts with a common carrier to transport its goods across state lines, as Defendants do here.

*See Edwards v. Aramark Unif. & Career Apparel, LLC*, No. 14 C 8482, 2016 WL 236241, at *11-12 (N.D. Ill. Jan. 19, 2016) (discussing the MC-207 factors and describing the defendant/employer as the shipper where the employer contracted with, and paid a common carrier to deliver its goods from its Georgia distribution center to its Chicago Market Center ("CMC"), and the employer's drivers then transported the goods from the CMC to the employer's customers); *see also Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 896–97 (7th Cir. 2009) (finding that product moved in interstate commerce where the employer bought wine from a vineyard in Indiana, had the wine shipped to its Chicago warehouse by hiring independent truck companies, and the employees transported the wine from the Chicago warehouse to the employer's customers in Illinois).

Additionally, several of the other MC-207 factors suggest that Defendants had the intent that their product continue in interstate commerce to its ultimate destination in Michigan or Ohio.  According to Weichel's declaration, Defendants did not process or modify their product at their warehouse, and the product was under Defendants' control when it was at the warehouse.  Defendants paid for the transportation of the produce from the out-of-state supplier to its ultimate destinations in Michigan and Ohio, and they stored this out-of-state produce at a warehouse that Defendants owned.  These factors, considered together, show an intent of Defendants to have their product travel in interstate commerce until it

reached its customers.  In *Finn*, the district court assessed the MC-207 factors, finding that the employer did not alter or repackage the goods that it obtained from out-of-state, it owned the products throughout their shipment, paid all shipping costs, arranged for the transport of the product, and used an automated system to track the products.  *Finn*, 53 F. Supp. 3d at 1048, 1055-56.  The court concluded that the MCA exemption applied, even though only 10% of the employer's sales volume came from product that the defendant procured from out-of-state.

Here, although unlike the employer in *Finn*, Defendants do re-package their goods, Defendants still make all of the arrangements to ship the product, including paying for the shipments, and they store the out-of-state product in their warehouse before they deliver it to their customers.  Further, Defendants only re-package the product, they do not process or alter the actual product.  In *Goldberg v. Faber Industries, Inc.*, the Seventh Circuit found that there was a break in the continuity of transportation where meat scraps were delivered to rendering plants to be processed into grease and livestock and poultry foods.  291 F.2d 232, 234 (7th Cir. 1961).  Unlike the *Goldberg* defendant, Defendants here keep the produce they order in its original form.  The *Finn* court assessed similar factors as those that exist here and found that interstate intent existed.  Similarly, this court finds that the MC-207 factors support a finding that Defendants have had a fixed and persistent intent for their produce shipments to continue in interstate commerce,

even though not all of their product is procured from out-of-state sources.  Because at least some of the product that Smith transported for Defendants was a part of interstate commerce, the MCA exemption applies to his employment with Defendants.

Defendants also point to evidence in the record showing that the DOT regulates the Defendant companies to support its motion.  Indeed, Defendants' employee manual is replete with references to DOT requirements, (ECF No. 19-4), and the record contains an email to Weichel from the DOT about an upcoming safety investigation.  (ECF NO. 19-3, PageID.126).  However, Defendants are regulated by the DOT in their capacity as a commercial driving company.  *See Finn*, 53 F. Supp. 3d at 1049 (noting that the plaintiff had to concede that "[a]ll commercial vehicles and those licensed to drive commercial vehicles are regulated by the DOT to a certain extent.").  Thus, evidence of regulation by the DOT does not in and of itself prove that Defendants engage in interstate commerce, or that Defendants buy their product from out-of-state suppliers.

Nonetheless, for the reasons discussed above, this court concludes that Defendants are not bound to FLSA's overtime wage compensation requirements.

### 2.    Expectation to Travel in Interstate Commerce

Defendants also contend in their Motion that even if their product was not considered a part of interstate commerce, Smith should have reasonably expected

to make one of Defendants' interstate trips to Ohio.  (ECF No. 19, PageID.103).

Therefore, the MCA exemption still applies to Smith's employment.  *Id.*  Smith

counters that there is a genuine issue of fact about whether he could have been

called upon to drive out-of-state during his employment with Defendants.  (ECF

No. 20, PageID.350).

This court need not determine whether Smith could have been called upon to

drive out-of-state because it has concluded that Smith's intrastate driving of

Defendants' products from their warehouse to their customers constituted

transportation in interstate commerce.  A review of the case law and guidelines

regarding the MCA exemption makes it clear that the "expectation to travel in

interstate commerce" test is but one of the means an employer can use to prove that

the MCA exemption applies.  However, the test is not a necessary inquiry.  *See*

*Burlaka v. Contract Transp. Servs. LLC*, 971 F.3d 718, 719 (7th Cir. 2020) (stating

that the MCA exemption "even" applies to drivers that have not driven in interstate

commerce if they are alternatively employed by a carrier that "has engaged in

interstate commerce and . . . the driver[s] could reasonably have been expected to

make one of the carrier's interstate runs.").  *See also* Application of the Federal

Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902, 37,903 (July 23, 1981)

(stating that "if a driver is, *or* could be, called upon to transport a shipment in

interstate commerce, the driver is subject to [DOT] jurisdiction.") (emphasis

added).  In this case, the court has concluded that Smith's transportation of Defendants' goods constituted transportation in interstate commerce.  Therefore, whether Smith could have been called upon to drive out-of-state during his employment is an unnecessary inquiry.

## V.  CONCLUSION

For the reasons discussed herein, the Court concludes that Defendants are not bound by the FLSA overtime wage requirements in relation to Smith's employment. The court **GRANTS** Defendants' Motion for Summary Judgment.

**SO ORDERED**.

Dated:  March 17, 2021                    s/Stephanie Dawkins Davis
                                                          HON. STEPHANIE DAWKINS DAVIS
                                                          United States District Court Judge