UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PATRICE SMITH,**

                 Plaintiff,

v.

**COASTAL PRODUCE DISTRIBUTORS, INC.,**
**COASTAL CARRIERS, LLC,**
**S&W TRANSPORT, LLC,**
**LAWRENCE WEICHEL,**
**CHERIE WEICHEL, AND**
**TODD STADWICK,**

                 Defendants.

Case No. 4:19-cv-13095
Hon. Stephanie Dawkins Davis
Mag. Anthony P. Patti

---

**PLAINTIFF'S MOTION FOR RECONSIDERATION
TO ALTER AND/OR AMEND THE COURT'S ORDER
GRANTING  DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

BRIEF ................................................................................................................... 3

  A. STANDARD OF REVIEW ........................................................................ 3

  B. ARGUMENT............................................................................................... 5

    1. The terms importer and shipper are *not* synonymous. ................................ 6

    2. The cases the Court relied upon are distinguishable. ................................ 11

    3. Sixth Circuit case law and the district courts within this Circuit do not support the notion that an employer is the "shipper" for purposes of ascertaining the relevant intent in situations where the employer did not "produce the goods." ........................................................................ 12

CONCLUSION ................................................................................................... 15

# INDEX OF AUTHORITIES

## Cases

*Baird v. Wagoner Transp. Co.*,
  425 F.2d 407 (6th Cir. 1970) ............................................................................. 16

*Berridge v. Heiser*,
  993 F. Supp. 1136 (S.D. Ohio 1997) ............................................................... 8

*Collins v. Heritage Wine Cellars, Ltd.*,
  589 F.3d 895 (7th Cir. 2009) ..................................................................... 10, 16

*Edwards v. Aramark Unif. & Career Apparel, LLC*,
  No. 14 C 8482, 2016 WL 236241 (N.D. Ill. Jan. 19, 2016) ....................... 10, 15

*Forman v. Meridian Bioscience, Inc.*,
  387 F. Supp. 3d 791 (S.D. Ohio 2019) ............................................................ 8

*GenCorp, Inc. v. American Int'l Underwriters*,
  178 F.3d 804 (6th Cir. 1999) ......................................................................... 8, 9

*Horn v. Digital Cable & Communications, Inc.*,
  No. 1:06CV325, 2008 WL 7137186 (N.D. Ohio June 12, 2008) ................... 17

*Mena v. McArthur Dairy, LLC*,
  352 Fed. Appx. 303 (11th Cir.2009) ............................................................... 18

*Musarra v. Digital Dish, Inc.*,
  454 F.Supp.2d 692 (S.D. Ohio) ..................................................................... 17

*Olson v. The Home Depot*,
  321 F.Supp.2d 872  (E.D. Mich. 2004) ............................................................ 9

*Russell v. Delco Remy Div. of General Motors Corp.*,
  51 F.3d 746 (7th Cir. 1995). ............................................................................ 8

*Smith v. Werner Enterprises, Inc.*,
  No. CIV.A. 14-0107-WS-B, 2015 WL 4429046 (S.D. Ala. July 20, 2015) ...... 18

*Tang v. Wing Keung Enterprises, Inc.*,
  No. 14 CV 390 (JBW)(LB) 2016 WL 6110454 (E.D.N.Y. July 11, 2016) ....... 17

*United States v. Cican,*
        156 F.Supp.2d 661 (E.D.Mich.2001) ...................................................................9

**Other Authorities**

U.S. Dep't of Labor, Field Operations Handbook
        Section 24d02 (Rev. 690, May 23, 2016)............................................. 11, 12, 14

## **ISSUE PRESENTED**

Should the Court reconsider its opinion and order granting Defendants' Motion for Summary Judgment in this matter, which was based on clear error of law in finding that Defendants were the "shippers" for purposes of application of the Motor Carrier Act ("MCA") exemption.

Plaintiff states: Yes

Defendant states: No

Pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 59.1, Plaintiff, Patrice Smith, respectfully requests this Court reconsider its decision granting Defendants' Motion for Summary Judgment in this matter, which was based on clear error of law in finding that Defendants were the shipper for purposes of application of the Motor Carrier Act ("MCA") exemption.

## **INTRODUCTION**

In its March 17, 2021 Opinion and Order Granting Defendants' Motion for Summary Judgment, this Court held that the Plaintiff is exempt from the Fair Labor Standards Act ("FLSA") overtime wage requirement because the MCA exemption applies to his employment. *Smith v. Costal Produce Distributors, Inc.*, Case No. 19-13095, 2021 WL 1036910, at *1 (E.D. Mich. March 17, 2021). In reaching its holding, the Court analyzed the factors set forth in *Ex Parte* MC. No. 207, and acknowledged that *Ex. Parte* MC No. 207 indicates that "[t]he essential and controlling element in determining whether the traffic is properly characterized as interstate is whether the shipper has a fixed and persistent intent to have the shipment continue in interstate commerce to its ultimate destination." *Id. at *4 (citing Ex Parte* MC No. 207). The Court's holding is fundamentally flawed inasmuch as it was based on the Court's determination that Defendants were the "shipper" of goods where Defendants did not produce the goods, and is directly

contrary to all available authority on this issue, including the guidance promulgated by the Department of Labor ("DOL").

The Court committed an error of law because it relied on **Defendants'** fixed and persistent intent (not that of the third-party suppliers) to have the products continue in interstate commerce to its ultimate destination such that the MCA exemption applies. This conclusion was based on the Court's factual finding that Defendants "procured the produce from out-of-state suppliers and arranged for its shipment to Michigan." *Smith*, 2021 WL 1036910, at *7. However, this factual finding indicates that Defendants were the **Importer**, not the shipper, and it was clear legal error to conflate Defendants' status as an **importer** with that of the third-party **shippers**; the entity that "produced the goods" and whose fixed and persistent intent is relevant for purposes of the application of the MCA exemption.

Respectfully, the Court's finding in this regard constitutes a palpable defect, and correcting this defect is necessary to correct clear error, to prevent manifest injustice, and will result in a different disposition of the case (namely a denial of Defendants' motion for summary judgment). For these reasons, the Court is due to grant reconsideration and to vacate its Opinion and Order granting Defendants' Motion for Summary Judgment.

## **BRIEF**

### A. STANDARD OF REVIEW

The United States District Court Eastern District of Michigan's Local Rules

provide for Rehearing or Reconsideration of a judgment or an order on a motion in

LR 7.1 (h), which states:

> **(h) Motions for Rehearing or Reconsideration.**
>
> **(1) Time**. Subject to LR 59.1, a motion for rehearing or reconsideration must be filed within 14 days after entry of the judgment or order.
>
> **(2) No Response and No Hearing Allowed**. No response to the motion and no oral argument are permitted unless the court orders otherwise.
>
> **(3) Grounds**. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

The Local Rules also allow for one to motion to alter or amend a judgment

in L.R. 59.1, which reads:

> **LR 59.1 Motion to Alter or Amend a Judgment**
>
> (a) A motion to alter or amend a judgment must be filed within the time allowed by Federal Rule of Civil Procedure 59(e)
>
> (b) No response to a motion to alter or amend a judgment and no oral argument are permitted unless the court directs otherwise.

"Motions for reconsideration are treated as motions to amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." *Forman v. Meridian Bioscience, Inc.,* 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019).  There are three grounds for amending a judgment pursuant to Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at the time of trial; and (3) to correct a clear error of law or to prevent manifest injustice." *Berridge v. Heiser*, 993 F. Supp. 1136, 1146–47 (S.D. Ohio 1997); *see also GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (same).  "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995).

To succeed on a motion for reconsideration "[t]he movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also must show that correcting the defect will result in a different disposition of the case." E.D. Mich. Local R. 7.1(g)(3). A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest, or plain." *United States v. Cican,* 156 F.Supp.2d 661, 668 (E.D.Mich.2001) (Gadola, J.); *see also Olson v. The Home Depot,* 321 F.Supp.2d 872, 874 (E.D. Mich. 2004); *United States v. Cican,* 156 F. Supp.2d 661, 668 (E.D. Mich. 2001).

4

Likewise, Motions to Alter or Amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Here, the Court's finding that Defendants are a shipper constitutes a palpable defect, and correcting this defect is necessary to correct a clear error of law and to prevent manifest injustice, where the outcome will result in a different disposition of the case (namely a denial of Defendants' motion for summary judgment).

## B. ARGUMENT

The Court held that Defendants are the "shipper" as a matter of law based on the following analysis:

> In addition, the MC-207 factors further tend to show that Defendants had a fixed and persistent intent to have their product continue in interstate commerce to its ultimate destination such that the MCA exemption applies. As an initial matter, Smith argues that the MC-207 factors look to the out-of-state *shipper's* intent with respect to the product—the out-of-state supplier—and not the intent of the distributing entity—i.e., Defendants. (ECF No. 20, PageID.347-48). Therefore, Smith contends that it is improper for Defendants to make their argument concerning the MC-207 factors from their perspective and not the west coast shipper's perspective. *Id*. However, Smith's argument is not persuasive. First, this court has concluded that **Defendants were the entity/entities that procured the produce from out-of-state suppliers and arranged for its shipment** to Michigan. Further, **other courts assessing the MC-207** factors have looked to the defendant/employer's intent, even when the defendant/employer contracts with a common carrier to transport its goods across state lines, as Defendants do here. *See **Edwards v. Aramark Unif. & Career Apparel**, LLC*, No. 14 C 8482, 2016 WL

5

236241, at *11-12 (N.D. Ill. Jan. 19, 2016) (discussing the MC-207 factors and describing the defendant/employer as the shipper where the employer contracted with, and paid a common carrier to deliver its goods **from** __its__ **Georgia distribution center to** __its__ **Chicago Market Center ("CMC"),** and the employer's drivers then transported the goods from the CMC to the employer's customers); *see also* ***Collins v. Heritage Wine Cellars, Ltd.***, 589 F.3d 895, 896–97 (7th Cir. 2009) (finding that product moved in interstate commerce where the employer bought wine from a vineyard in Indiana, had the wine shipped to its Chicago warehouse by hiring independent truck companies, and the employees transported the wine from the Chicago warehouse to the employer's customers in Illinois).

*Smith*, 2021 WL 1036910, at *7 (emphasis added).   As is clear from the Court's analysis, the Court conflated the terms "shipper" and "importer," treating them as one in the same.  *Id.* (concluding that Defendants were the shipper because "Defendants were the entity/entities that procured the produce from out-of-state suppliers and arranged for its shipment to Michigan,").   Further compounding this error, the Court relied on two inapposite cases, neither of which support the Court's holding that the terms "shipper" and "importer" are synonymous.   As further discussed below, both the Court's holding and its reliance on inapposite cases as authority therefore constitute clear legal error which, if corrected, will result in a different resolution of this case.

## 1. The terms importer and shipper are *not* synonymous.

In support of its holding that Costal Produce Distributors, Inc. was the "shipper" as a matter of law for purpose of ascertaining the requisite fixed and persistent intent, the Court cited its finding that Defendants "were the

6

entity/entities that procured the produce from out-of-state suppliers and arranged for its shipment to Michigan." *Id.*[1]   This fact does not make or transform Defendants into the "shipper".   Rather this fact simply makes Defendants the "**importer**" of the property that purportedly travelled across state lines "from [third-party] out-of-state suppliers," who are the "shippers" as a matter of law.

This is far from an issue of first impression.   The DOL has consistently defined the term "shipper" to preclude employers like Defendants who order goods and materials from out-of-state simply because they import the goods and materials themselves.   U.S. Dep't of Labor, Field Operations Handbook § 24d02 (Rev. 690, May 23, 2016), *available at* https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-24.   Equally important, well-settled binding Sixth Circuit authority has repeatedly held that the DOL's interpretations of its own regulations are due *Skidmore* deference.   In the absence of contra authority, the Court's holding that Defendants were the "shipper" such that their intent was the relevant intent was in error.

---

[1] For purposes of this Motion, Plaintiff will not dispute whether Defendants were in fact the "importers" in this matter, because a determination that Defendants were the importers would not transform the Defendants into a shipper, either way. However, it is worth noting that Defendants' self-serving declaration does not claim that it served as the importer of the goods produced by the out-of-state suppliers.   Rather, Defendant's declaration states that it "arranges with third party shippers to deliver the product from the out-of-state suppliers."   ECF No. 19-3, PageID.115.   This may or may not mean that Defendants were the importers. However, a conclusion that Defendants were the importers based on this statement in support of a defense summary judgment motion is not warranted.

Section 24d02 of the DOL's Field Operations Handbook ("DOL Handbook") states in relevant part:

> The term "fixed and persisting transportation intent" as used by the DOT **refers to the intent of the shipper** of the commodities into the state, <u>**who may or may not also be the importer**</u> . . . (b) **In some situations the shipper is also the importer**, as would be the case where a manufacturer, such as a bakery, <u>**produces goods in one state and** moves them **through** his **distribution point in another state** to his **customers in that state.** <u>**The employer, as the shipper,** knows at the time of the shipment what he intends to do with the goods after they reach</u> <u>his</u> **out-of-state distribution point** . . .

*Id.* (emphasis added). As relevant here, the DOL Handbook clearly distinguishes the role of a "shipper" and that of "importer," indicates that the out-of-state shipper "may or may not also be the importer," and acknowledges that the importer is only considered the shipper where the shipper/importer "produces goods in one state", and then imports them to the shipper's distribution point in another state. *Id.*[2]

---

[2] The Sixth Circuit has repeatedly deferred to the DOL's interpretations of its regulations as set forth in the DOL Handbook. *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531–32 (6th Cir. 2017) ("Our determination that this policy is lawful finds support in the DOL Field Operations Handbook, as well as several DOL opinion letters. We recognize that these interpretations of Department regulations are 'not 'subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment,' and therefore are not controlling or entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–844 (1984) (citations omitted). *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). However, interpretations, opinions, and explanatory guidelines 'do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999) (noting the persuasive authority of

In the case at bar, Defendants are ***not*** the shippers as a matter of law, because they **did not produce the goods out-of-state**.  Rather, Defendants served as the **importer** of the goods that were produced by the "out-of-state suppliers," who are the actual "shippers" as a matter of law for purposes of ascertaining whether there was a fixed and persistent intent.  *See Smith*, 2021 WL 1-26910 at *1 ("Costal produce arranges with third-party shippers to deliver the product from the out-of-state suppliers to its Detroit warehouse.").  Based on this fact alone, it was clear error to hold that Defendants were nonetheless the "shipper" and to look to Defendants' intent as the relevant intent.

Section 24d02(f) of the DOL Handbook further states:

> In situations other than those in FOH 24d02(b) -(e) above, the Wage and Hour Investigator (WHI) shall make every effort to determine the "fixed and persisting transportation intent" **of the shipper** by ascertaining **from the information available at the establishment under investigation** whether the three DOT tests are met.[3]  In the

---

the Field Operations Handbook, which is "issued by the government agency responsible for enforcement of the federal wage and hour laws)")).

[3] On a related note, the Court utilized the outdated MC-207 factors in its analysis; a test that was introduced in 1992 by the Interstate Commerce Commission, which was abolished by Congress in 1995.  *See Smith*, 2021 WL 1026910 at fn. 2.  The DOL handbook, which was revised in 2016, utilizes the current three factor test to determine whether the shipper has a fixed and persistent transportation intent beyond the terminal storage point at the time of shipment.  *See*  U.S. Dep't of Labor, Field Operations Handbook § 24d02(a) (Rev. 690, May 23, 2016) ("It has been specifically found that there is no fixed and persisting intent where the following three conditions are present: (1) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination[;] (2) The terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or

case of the typical wholesaler or supplier this will generally present no problem because the facts will be available to show whether tests (2) and (3) in FOH 24d02(a) above are met and the presence or absence of any transportation intent **beyond the importer's establishment <u>on the part of the shipper</u> can ordinarily be demonstrated from the importer's purchase orders, invoices, and other similar records. In the event the WHI is unable to resolve the question from information available at the establishment under investigation, he shall make <u>no attempt to contact the shipper.</u>** In such situations the matter shall be referred promptly to the district director (DD) and the regional administrator (RA) shall be contacted as necessary for additional guidance or to consult the regional solicitor of labor (RSOL) as appropriate.

U.S. Dep't of Labor, Field Operations Handbook § 24d02 (Rev. 690, May 23, 2016) (emphasis added). The above-quoted example found in Section 24d02(f) is similar to this matter where the shipper did not serve as the importer, and the shipper's intent "beyond the importer's establishment" can be determined, *inter alia*, through the importer's purchase orders, invoices, and other similar records. Here, Defendants do not assert that the "out-of-state suppliers" maintained a fixed and persistent intent to transport goods beyond the importer (Defendants) establishment, and its Motion for Summary Judgment must therefore be denied.

Ultimately, the DOL Handbook makes a clear distinction between the "importer" and "shipper", indicates that the out-of-state shipper "may or may not also be the importer", and acknowledges that the "importer" is only considered the

---

allocated[;] (3) Transportation in the furtherance of this distribution within the single state is specifically arranged only after sale or allocation from storage[.]")

"shipper" where the shipper/importer "produces goods in one state", and then imports them to the shipper's distribution point in another state. The fact that the Court determined that Defendants were the "importer" does not transform Costal Produce Distributors, Inc. into a "shipper" as a matter of law for purpose of determining intent for the MCA exemption in a matter where Costal Produce Distributors, Inc. did not produce the goods out-of-state.

**2. The cases the Court relied upon are distinguishable.**

In support of its holding, the Court relied on two cases, both of which are inapposite to the facts at bar. In *Edwards v. Aramark Unif. & Career Apparel, LLC*, No. 14 C 8482, 2016 WL 236241 (N.D. Ill. Jan. 19, 2016), the plaintiff was employed by Aramark Uniform and Career Apparel, LLC ("AUCA") and Aramark, two related entities. *Id.* at *1. The plaintiff in *Edwards* worked as a delivery driver in Illinois, was assigned to work out of AUCA's Chicago Market Center ("CMC"), and transported, *inter alia*, "Grade A uniforms [that were] **shipped from AUCA's** distribution Center in Lawrenceville, Georgia" and Reno, Nevada **to AUCA's CMC** in Illinois. *1-2. Unlike here, in *Edwards*, the employer was also the importer **and** the shipper. Thus, the *Edwards* Court correctly held the relevant inquiry was AUCA's fixed and persistent intent because AUCA was the shipper (i.e. the entity that produced the uniforms out-of-state) in the *Edwards* litigation, where the property that was purportedly transported in interstate

11

commerce was shipped from, *inter alia*, AUCA's Lawrenceville, Georgia and Reno, Nevada distribution centers to Illinois where the *Edwards* plaintiff worked. In contrast, here, there is no evidence that the goods/materials at issue were produced by Costal Produce Distributors, Inc. and shipped from an out-of-state Costal Produce Distributors, Inc. distribution center to Costal Produce Distributors, Inc.'s Michigan facilities. For this reason, Costal Produce Distributors, unlike the defendants in *Edwards*, are not the shipper as a matter of law.

The Court's reliance on *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009) is equally misplaced where the district court's opinion in *Collins* indicates that the employer's status as shipper was not at issue. *See Collins v. Heritage Wine Cellars, Ltd.,* 2008 WL 5423550, at *15 (N.D. Ill. Dec. 29, 2008), *aff'd,* 589 F.3d 895 (7th Cir. 2009) ("[T]here is no dispute that Heritage . . . is the shipper."). To that end, the Seventh Circuit did not provide any analysis concerning Heritage Wine Cellars, Ltd.'s designation as a shipper. *Collins*, 589 F.3d 895. In contrast, here, the Court's analysis and conclusion that Defendants are the shippers for purposes of determining intent is vehemently disputed, is erroneous as a matter of law, and the *Collins* decision therefore does not support the Court's finding in this matter.

**3. Sixth Circuit case law and the district courts within this Circuit do not support the notion that an employer is the "shipper" for purposes of ascertaining the relevant intent in situations where the employer did not "produce the goods."**

12

Binding precedent from the Sixth Circuit does not identify a defendant/employer as the shipper as a matter of law for purposes of determining intent in MCA exemption cases where the defendant/employer was not the corporate entity that produced the goods. *See Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 413 (6th Cir. 1970) (utilizing the MC-48 factors to determine the fixed and persistent intent of Standard Oil of Indiana; not Defendant Wagoner Transp. Co.). Likewise, District Court cases within the Sixth Circuit do not identify the defendant/employer entity as the shipper in situations where the defendant/employer did not produce the goods that were purportedly transported across state lines. *See, e.g.*, *Musarra v. Digital Dish, Inc.*, 454 F.Supp.2d 692 (S.D. Ohio) (analyzing the fixed and persistent intent of the shipper Dish Network, and not the employer/Defendant, Digital Dish, Inc.); *Horn v. Digital Cable & Communications, Inc.*, No. 1:06CV325, 2008 WL 7137186 (N.D. Ohio June 12, 2008) (analyzing the fixed and persistent intent of the shipper Cox Communications; not the employer/Defendant Digital Cable & Communications, Inc.).

Indeed, District Courts throughout the country routinely reject a defense suggestion to determine interstate intent based on the defendant employer that did not produce the goods that were purportedly transported across state lines. For example, in *Tang v. Wing Keung Enterprises, Inc.,* No. 14 CV 390 (JBW)(LB),

13

2016 WL 6110454, at *11 (E.D.N.Y. July 11, 2016*), report and recommendation*

*adopted sub nom. Chaohui Tang v. Wing Keung Enterprises, Inc*., 210 F. Supp. 3d

376 (E.D.N.Y. 2016), the Eastern District of New York states:

> Defendants' factual allegations fall short of establishing that the goods were involved in a "continuity of movement in the flow of interstate commerce." First, defendants **fail to specifically focus on the shipper's intent** at the time the goods were shipped **and instead assert generally that** either the seller **or Wing Keung** (the defendant) "ultimately" intended the goods to be destined for shipment out of state. This conclusory statement is not supported by record evidence of the shipper's intent.

(emphasis added). Similarly, in *Smith v. Werner Enterprises, Inc.,* No. CIV.A. 14-

0107-WS-B, 2015 WL 4429046, at *4 (S.D. Ala. July 20, 2015), the Southern

District of Alabama found:

> The problem is that, as the defendant concedes, "[i]n determining whether goods are transported as a practical continuity of movement in interstate commerce, courts look at the shipper's 'fixed and persisting intent' at the time of the shipment." (Doc. 99 at 10–11 (quoting *Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 305–06 (11th Cir.2009)). **The defendant, however, has not even identified the shipper or shippers of the various shipments of scrap paper, much less offered any evidence that the fixed and persisting intent of the shipper** (whether Boise, the seller, or some other person or entity) **at the moment of shipment was that the scrap paper would remain in interstate commerce until received at the base mill.**
>
> **In sum, each of the defendant's arguments in favor of the MCA exemption's applicability is factually and/or legally bankrupt.** The plaintiffs thus are entitled to partial summary judgment on the exemption issue.

14

(emphasis added).  Likewise, here, the Court should analyze the fixed and persistent intent of the shippers, the "out-of-state suppliers"; and not the Defendants simply because the Defendants purportedly served as the importers in this matter.  Since the Defendant failed to offer any evidence of the out-of-state suppliers' fixed and persistent intent, Defendant's arguments are also factually and/or legally bankrupt, and fail as a matter of law.

## CONCLUSION

Wherefore, Plaintiff respectfully requests this Court reconsider its decision granting Defendants' Motion for Summary Judgment in this matter, which was based on clear error of law in finding that Defendants were the shipper for purposes of application of the MCA exemption, and Deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**GOLD STAR LAW, P.C.**

/s/ *Maia Braun*
**Maia J. Braun (P40533)**
**Caitlin E. Malhiot (P76606)**
Attorneys for Plaintiff
2701 Troy Center Dr., Ste. 400
Troy, MI 48084
(248) 275-5200

**Michael N. Hanna, Esq.**
Michigan Bar No.: P814162
Florida Bar No.: 85035
**Andrew R. Frisch, Esq.**

Fla. Bar No.  27777
**MORGAN & MORGAN, P.A.**
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 251-1399
Email:  mhanna@forthepeople.com
          afrisch@forthepeople.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing document was filed March 31, 2021 using the CM/ECF system, which will send notice of same to all counsel of record.

/s/ *Michael N. Hanna*
**MICHAEL N. HANNA, ESQ.**